# EXHIBIT 2

Give a Gift





Pelle Cass

CULTURE

# THE MAD, MAD WORLD OF NICHE SPORTS AMONG IVY LEAGUE–OBSESSED PARENTS

Where the desperation of late-stage meritocracy is so strong, you can smell it

By Ruth Shalit Barrett

NOVEMBER 2020 ISSUE

SHARE

*Updated at 7:25 p.m. ET on November 1, 2020.*

**Editor's Note:** *After* The Atlantic *published this article, new information emerged that raised serious concerns about its accuracy, and about the credibility of the author, Ruth Shalit Barrett.*

*We have decided to retract this article. We cannot attest to the trustworthiness and credibility of the author, and therefore we cannot attest to the veracity of the article.*

*We draw a distinction between retraction and removal. We believe that scrubbing the article from the internet would not meet our standards for transparency, and we believe it is important to preserve access to the article for the historical record. We have decided to take down the online version but to make available* [a PDF of the article]() *as it appears in our November 2020 issue.*

*We are sharing with our readers what we have learned so you may understand how we came to this decision. We have established that Barrett deceived* The Atlantic *and its readers about a section of the story that concerns a person referred to as "Sloane."*

*The original version of this article stated that Sloane has a son. Before publication, Sloane confirmed this detail to be true to* The Atlantic's *fact-checking department. After publication, when a* Washington Post *media critic asked us about the accuracy of portions of the article, our fact-checking department reached out to Sloane to recheck certain details. Through her attorney, Sloane informed us that she does not, in fact, have a son. We independently corroborated that Sloane does not have a son.*

*In explaining Sloane's reasoning for telling our fact-checker she had a son, Sloane's attorney told* The Atlantic *that she wanted to make herself less readily identifiable. Her attorney also said that according to Sloane, Barrett had first proposed the invention of a son, and encouraged Sloane to deceive* The Atlantic *as a way to protect her anonymity.*

*When we asked Barrett about these allegations, she initially denied them, saying that Sloane had told her she had a son, and that she had believed Sloane. The next day, when we questioned her again, she admitted that she was "complicit" in "compounding the*

deception" and that "it would not be fair to Sloane" to blame her alone for deceiving The Atlantic. Barrett denies that the invention of a son was her idea, and denies advising Sloane to mislead The Atlantic's fact-checkers, but told us that "on some level I did know that it was BS" and "I do take responsibility."

Sloane's attorney claimed that there are several other errors about Sloane in the article but declined to provide The Atlantic with examples. Barrett says that the fabricated son is the only detail about which she deceived our fact-checkers and editors.

During the initial fact-checking process, we corroborated many details of Sloane's story with sources other than Sloane. But the checking of some details of Sloane's story relied solely on interviews and other communications with Sloane or her husband or both of them.

In reviewing the article again after publication, our fact-checking department identified several additional errors.

We identified the need to clarify a detail about a neck injury sustained by Sloane's middle daughter, to be more precise about its severity. We also identified the need to correct the characterization of a thigh injury, originally described as a deep gash but more accurately described as a skin rupture that bled through a fencing uniform. And we identified the need to correct the location of a lacrosse family mentioned in the article: They do not live in Greenwich, Connecticut, but in another town in Fairfield County. Before this retraction, we noted and corrected these errors in the online version of the article on October 30.

Before that, on October 22, we noted and corrected another error in the story: The article originally referenced Olympic-size backyard hockey rinks, but although the private rinks are large and equipped with floodlights and generators, they are not Olympic-size.

We have also updated Barrett's byline. Originally, we referred to her as Ruth S. Barrett. When writing recently for other magazines, Barrett was identified by her full name, Ruth Shalit Barrett. (Barrett is her married name.) In 1999, when she was known by Ruth Shalit, she left The New Republic, where she was an associate editor, after plagiarism and inaccurate reporting were discovered in her work. We typically defer to authors on how their byline appears—some authors use middle initials, for example, or shorter versions of

*their given name. We referred to Barrett as Ruth S. Barrett at her request, but in the interest of transparency, we should have included the name that she used as her byline in the 1990s, when the plagiarism incidents occurred. We have changed the byline on this article to Ruth Shalit Barrett.*

*We decided to assign Barrett this freelance story in part because more than two decades separated her from her journalistic malpractice at* The New Republic *and because in recent years her work has appeared in reputable magazines. We took into consideration the argument that Barrett deserved a second chance to write feature stories such as this one. We were wrong to make this assignment, however. It reflects poor judgment on our part, and we regret our decision.*

## FROM OUR NOVEMBER 2020 ISSUE

Check out the full table of contents and find your next story to read.

See More

*Our fact-checking department thoroughly checked this piece, speaking with more than 40 sources and independently corroborating information. But we now know that the author misled our fact-checkers, lied to our editors, and is accused of inducing at least one source to lie to our fact-checking department. We believe that these actions fatally undermined the effectiveness of the fact-checking process. It is impossible for us to vouch for the accuracy of this article. This is what necessitates a full retraction. We apologize to our readers.*