# EXHIBIT 5



AUTHOR'S AGREEMENT

Date: November 7, 2019

Dear Ruth Barrett:

This letter confirms our agreement ("Agreement") regarding the article you ("Author") have agreed to create for, or submit to *The Atlantic*, a division of The Atlantic Monthly Group LLC ("Publisher") tentatively titled
Sports Tulip Mania (approx. 6000 words)
(the "Work"). The Work shall be submitted to Publisher by January 2020 (exact date TBD)

1.      Upon acceptance of the Work, Publisher will pay Author a one-time fee of $2/word (the "Fee") within thirty (30) days after first publication and receipt of all requested financial documents. This payment encompasses all of the rights granted herein. Publisher is under no obligation to publish the Work and acceptance of the Work is in the sole discretion of Publisher. Publisher will pay for preapproved documented expenses actually incurred in reporting this piece up to reasonable expenses
        If the Work is not accepted for publication, Publisher will pay Author a kill fee of $4000.

2.      Author agrees to license to Publisher and its sub-licensees the following rights in the Work in any language:

        (a)     exclusive worldwide rights to first publication in any print and digital properties, including but not limited to theatlantic.com, citylab.com and all mobile and app extensions, which exclusivity will last until 120 days from first publication in any format; and
        (b)     nonexclusive worldwide rights for the full term of copyright (i) to publish, reproduce, distribute, syndicate, translate, perform, or display the Work in all media now in existence or hereafter developed, including on electronic databases or online networks including mobile and app extensions; and (ii) to use the Work to promote and publicize Publisher's properties and the Work, including the right to use Author's name, image, likeness, photograph, voice, quotations and/or biographical information in such promotions and (iii) to publish or broadcast (but not dramatize) by radio, television, motion picture, or the Internet, without charge, such selections from the Work as Publisher decides in its discretion; and
        (c)     exclusive worldwide rights to dramatize the Work by radio, television, motion picture, or the Internet, and/or to publish, broadcast, or assign or sublicense the right to create derivative works to be displayed in such media.  In return, Publisher agrees to make commercially reasonable efforts, including through a contractual relationship with an agent selected by Publisher, to make such intellectual property rights available to interested parties and to market such rights.  Publisher agrees to pay Author fifty percent (50%) of all net revenues

(after agent and attorney's fees) from the sale of such rights.

3.     As between Publisher and the Author, the Author retains the copyright in the Work. Publisher will include a customary copyright notice and credit line when using the Work under the terms of this Agreement. On any occasion that Author republishes the Work, or allows republication of the Work, Author will include a credit line as follows: "© (year of first publication) (Author's name), as first published in *The Atlantic*."

4.     Publisher and its sub-licensees shall also have the right to edit, revise, modify, abridge, adapt, translate, and arrange for the translation of, the Work(s) in its sole discretion. Author agrees to cooperate fully in such procedures, including providing Publisher with any research material. Further, Author will reasonably cooperate with Publisher's requests for access to subjects and locations, including facilitating relationships and using best efforts to encourage participation in future projects.

5.     The subject of each Work and all details relating to it will be held confidential by Author and may be discussed by Author only with those individuals necessary for the preparation of the Work. Author will not allow anyone outside of Publisher (including but not limited to the subjects and the subjects' representatives) to view the Work(s) or portions thereof before publication. Following publication, Author will not interfere with or impede Publisher's efforts to exercise its rights under Paragraph 2.

6.     Author represents and warrants that:

   (a)    the Work is original; Author is the sole author of the Work or have the authority to grant the rights set forth in this Agreement; the Work has not been published previously in the English language and is not subject to any existing copyrights;
   (b)    the Work does not infringe the copyright, or invade the proprietary rights, or any other right, of any person or entity; the Work does not libel or invade the privacy or publicity rights of anyone; and the Work will not cause tortious harm to anyone;
   (c)    Author has no personal, business, or financial relationship or investment that would in any way conflict with reporting for, or preparation of, the Work, and Author does not hold stock or any other interest in any companies, or competitors of companies, that are the subject of Author's reporting (other than any such holdings that are through a mutual fund or other similar kind of indirect, non-discretionary investment);
   (d)    Author is under no limitation, prohibition, or restriction, whether verbal or written, with regard to publication of the Work, including without limitation any agreement of confidentiality or nondisclosure. Author shall indemnify and hold Publisher harmless from any and all loss, damage, and/or expense (including reasonable attorneys' fees) that it may suffer or incur by reason of any claim or the defense of any claim arising from the breach or the alleged breach of any of these representations or warranties made by Author; and
   (e)    Author will not, during or after completion of this Work, disclose information about Publisher's editing, production, or other publishing processes that is confidential, sensitive, proprietary, disparaging, and/or valuable, and is not in the public domain.  (Such information is

not considered to be in the public domain if it was disclosed in violation of an agreement or other obligation not to disclose it.)

7.     Author is providing the Work and performing the services under this Agreement as an independent contractor. Nothing contained in this Agreement shall be deemed to constitute Author as an agent, representative, partner, joint venturer, or employee of Publisher for any purpose. Accordingly, Publisher will not withhold any amounts for income tax, Social Security, unemployment insurance, disability insurance, workers' compensation insurance, or any other withholding pursuant to any law or regulation applicable to employees, and Author will not be eligible to participate in any employee benefit plan offered by or through Publisher. Author shall be solely liable for the payment of any and all taxes imposed by federal, state, or local governments and for any insurance, and Author agrees to hold Publisher harmless from any liability with respect thereto.

8.     Author agrees to use best efforts to participate in the promotion and marketing of the Work and Publisher by making reference to the Work and Publisher in settings including, but not limited to, articles or books written by or about Author or the Work, interviews, editorials, press conferences, press releases, television appearances, Internet Web sites maintained and operated by Author, and any other media available for the promotion of the Work to which Author has access.

9.     This Agreement is effective as of the first date set forth above and will continue until terminated by either party upon thirty (30) days written notice to the other party, but in no event will Author terminate while any Work is in progress. If Author breaches this agreement or fails to fulfill Author's responsibilities, Publisher may, in addition to its other remedies, immediately terminate this agreement and/or cease making payments. Paragraphs 6, 7, 10, 11 and 12 shall survive the termination of this Agreement.

10.    This Agreement is the entire agreement with respect to the subject matter contained herein, superseding any prior negotiations and agreements. This Agreement will be governed by the laws of the District of Columbia without regard to conflict of laws rules in the District of Columbia or elsewhere. The parties agree that any dispute shall be brought in the courts located in the District of Columbia and both parties consent to such jurisdiction.

11.    The provisions of this Agreement are severable. If any provision of this Agreement or the application of any such provision to any person or circumstance is held invalid, illegal, or otherwise unenforceable in any respect by a court of competent jurisdiction, the remainder of the provisions of this Agreement will in no way be affected, impaired, or invalidated, and to the extent permitted by applicable law, any such provision will be restricted in applicability or reformed to the minimum extent required for such provision to be enforceable. This provision will be interpreted and enforced to give effect to the original written intent of the parties prior to the determination of such invalidity or unenforceability.

12.    If this Agreement is executed by an agent or representative on Author's behalf, said agent or representative represents and warrants that it has full right and authority to enter into this agreement on behalf of and to bind Author, and will indemnify Publisher against any claims of

any nature arising from said agent or representative's execution of this agreement.

Please indicate your agreement to the terms set forth above by signing the enclosed copy of this letter in the space indicated and returning it to me at your earliest convenience.

Very truly yours,

**Signature:** *Amy Weiss-Meyer*
Amy Weiss-Meyer (Nov 7, 2019)

**Email:** amy@theatlantic.com

Agreed to and accepted by:

**Signature:** _____
Ruth Barrett (Dec 30, 2019)

**Email:** rlsbarrett@gmail.com