# EXHIBIT 8

## FIRST EDITOR'S NOTE
*Published online on October 30, 2020*

Editor's Note: After The Atlantic published this article, new information emerged that has raised serious concerns about its accuracy, and about the credibility of the author, Ruth Shalit Barrett.

We have established that Barrett deceived The Atlantic and its readers about a section of the story that concerns a person referred to as "Sloane." We are sharing with our readers what we have learned so far. [Commented [A1]: Defamatory Statement No. 4]

The original version of this article stated that Sloane has a son. Before publication, Sloane confirmed this detail to be true to The Atlantic's fact-checking department. After publication, when a Washington Post media critic asked us about the accuracy of portions of the article, our fact-checking department reached out to Sloane to recheck certain details. Through her attorney, Sloane informed us that she does not, in fact, have a son. We have independently corroborated that Sloane does not have a son, and we have corrected the story to remove the reference to her having a son.

In explaining Sloane's reasoning for telling our fact-checker she had a son, Sloane's attorney told The Atlantic that she wanted to make herself less readily identifiable. Her attorney also said that according to Sloane, Barrett had first proposed the invention of a son, and encouraged Sloane to deceive The Atlantic as a way to protect her anonymity. [Commented [A2]: Defamatory Statement No. 5]

When we asked Barrett about these allegations, she initially denied them, saying that Sloane had told her she had a son, and that she had believed Sloane. The next day, when we questioned her again, she admitted that she was "complicit" in "compounding the deception" and that "it would not be fair to Sloane" to blame her alone for deceiving The Atlantic. Barrett denies that the invention of a son was her idea, and denies advising Sloane to mislead The Atlantic's fact-checkers, but told us that "on some level I did know that it was BS" and "I do take responsibility."

Sloane's attorney claimed that there are several other errors about Sloane in the article but declined to provide The Atlantic with examples. Barrett says that the fabricated son is the only detail about which she deceived our fact-checkers and editors. Our fact-checking department is continuing to thoroughly recheck the article.

We have already corrected and clarified other details in the story. During the initial fact-checking process, we corroborated many details of Sloane's story with sources other than Sloane. But the checking of some details of Sloane's story relied solely on interviews and other communications with Sloane or her husband or both of them.

We have clarified a detail about a neck injury sustained by Sloane's middle daughter, to be more precise about its severity. We have corrected a detail about a thigh injury, originally described as a deep gash but more accurately described as a skin rupture that bled through a fencing uniform. And we've corrected the location of a lacrosse family mentioned in the article: They do not live in Greenwich, Connecticut, but in another town in Fairfield County.

On October 22, we noted and corrected another error in the story: The article originally referenced Olympic-size backyard hockey rinks, but although the private rinks are large and equipped with floodlights and generators, they are not Olympic-size.

We are also updating Barrett's byline. Originally, we referred to her as Ruth S. Barrett. When writing recently for other magazines, Barrett was identified by her full name, Ruth Shalit Barrett. (Barrett is her married name.) In 1999, when she was known by Ruth Shalit, she left The New Republic, where she was an associate editor, after plagiarism and inaccurate reporting were discovered in her work. We typically defer to authors on how their byline appears—some authors use middle initials, for example, or shorter versions of their given name. We referred to Barrett as Ruth S. Barrett at her request, but in the interest of transparency, we should have included the name that she used as her byline in the 1990s, when the plagiarism incidents occurred. We have changed the byline on this article to Ruth Shalit Barrett.

**Commented [A3]:** Defamatory Statement No. 18A

**Commented [A4]:** Defamatory Statement No. 15

**Commented [A5]:** Defamatory Statement No. 18B

**Commented [A6]:** Defamatory Statement No. 18C

We decided to assign Barrett this freelance story in part because more than two decades separated her from her journalistic malpractice at The New Republic and because in recent years her work has appeared in reputable magazines. We took into consideration the argument that Barrett deserved a second chance to write feature stories such as this one. We were wrong to make this assignment, however. It reflects poor judgment on our part, and we regret our decision.

**Commented [A7]:** Defamatory Statement No. 22 – identical language in 2nd and 3rd Editors Notes

We are continuing to review this article. We will correct any errors we find, and we will communicate our findings to our readers as speedily as possible.

Updated at 11:06 p.m. ET on October 30, 2020.

## SECOND EDITOR'S NOTE
*Published online on November 1, 2020*

Updated at 7:25 p.m. ET on November 1, 2020.

Editor's Note: After The Atlantic published this article, new information emerged that raised serious concerns about its accuracy, and about the credibility of the author, Ruth Shalit Barrett.

We have decided to retract this article. We cannot attest to the trustworthiness and credibility of the author, and therefore we cannot attest to the veracity of the article. [Commented [A8]: Defamatory Statement No. 6]

We draw a distinction between retraction and removal. We believe that scrubbing the article from the internet would not meet our standards for transparency, and we believe it is important to preserve access to the article for the historical record. We have decided to take down the online version but to make available a PDF of the article as it appears in our November 2020 issue.

We are sharing with our readers what we have learned so you may understand how we came to this decision. We have established that Barrett deceived The Atlantic and its readers about a section of the story that concerns a person referred to as "Sloane." [Commented [A9]: Defamatory Statement No. 7]

The original version of this article stated that Sloane has a son. Before publication, Sloane confirmed this detail to be true to The Atlantic's fact-checking department. After publication, when a Washington Post media critic asked us about the accuracy of portions of the article, our fact-checking department reached out to Sloane to recheck certain details. Through her attorney, Sloane informed us that she does not, in fact, have a son. We independently corroborated that Sloane does not have a son.

In explaining Sloane's reasoning for telling our fact-checker she had a son, Sloane's attorney told The Atlantic that she wanted to make herself less readily identifiable. Her attorney also said that according to Sloane, Barrett had first proposed the invention of a son, and encouraged Sloane to deceive The Atlantic as a way to protect her anonymity. [Commented [A10]: Defamatory Statement No. 8]

When we asked Barrett about these allegations, she initially denied them, saying that Sloane had told her she had a son, and that she had believed Sloane. The next day, when we questioned her again, she admitted that she was "complicit" in "compounding the deception" and that "it would not be fair to Sloane" to blame her alone for deceiving The Atlantic. Barrett denies that the invention of a son was her idea, and denies advising Sloane to mislead The Atlantic's fact-checkers, but told us that "on some level I did know that it was BS" and "I do take responsibility."

Sloane's attorney claimed that there are several other errors about Sloane in the article but declined to provide The Atlantic with examples. Barrett says that the fabricated son is the only detail about which she deceived our fact-checkers and editors.

During the initial fact-checking process, we corroborated many details of Sloane's story with sources other than Sloane. But the checking of some details of Sloane's story relied solely on interviews and other communications with Sloane or her husband or both of them.

In reviewing the article again after publication, our fact-checking department identified several additional errors.

We identified the need to clarify a detail about a neck injury sustained by Sloane's middle daughter, to be more precise about its severity. We also identified the need to correct the characterization of a thigh injury, originally described as a deep gash but more accurately described as a skin rupture that bled through a fencing uniform. And we identified the need to correct the location of a lacrosse family mentioned in the article: They do not live in Greenwich, Connecticut, but in another town in Fairfield County. Before this retraction, we noted and corrected these errors in the online version of the article on October 30.

Before that, on October 22, we noted and corrected another error in the story: The article originally referenced Olympic-size backyard hockey rinks, but although the private rinks are large and equipped with floodlights and generators, they are not Olympic-size.

We have also updated Barrett's byline. Originally, we referred to her as Ruth S. Barrett. When writing recently for other magazines, Barrett was identified by her full name, Ruth Shalit Barrett. (Barrett is her married name.) In 1999, when she was known by Ruth Shalit, she left The New Republic, where she was an associate editor, after plagiarism and inaccurate reporting were discovered in her work. We typically defer to authors on how their byline appears—some authors use middle initials, for example, or shorter versions of their given name. We referred to Barrett as Ruth S. Barrett at her request, but in the interest of transparency, we should have included the name that she used as her byline in the 1990s, when the plagiarism incidents occurred. We have changed the byline on this article to Ruth Shalit Barrett.

**Commented [A11]:** Defamatory Statement No. 18A – identical language in 1st Editor's Note

**Commented [A12]:** Defamatory Statement No. 15 – identical language in 1st Editor's Note

**Commented [A13]:** Defamatory Statement No. 18B – Ditto

**Commented [A14]:** Defamatory Statement No. 18C - Ditto

We decided to assign Barrett this freelance story in part because more than two decades separated her from her journalistic malpractice at The New Republic and because in recent years her work has appeared in reputable magazines. We took into consideration the argument that Barrett deserved a second chance to write feature stories such as this one. We were wrong to make this assignment, however. It reflects poor judgment on our part, and we regret our decision.

**Commented [A15]:** Defamatory Statement No. 22 – identical language in 1st and 3rd Editors Notes

Our fact-checking department thoroughly checked this piece, speaking with more than 40 sources and independently corroborating information. But we now know that the author misled our fact-checkers, lied to our editors, and is accused of inducing at least one source to lie to our fact-checking department. We believe that these actions fatally undermined the effectiveness of the fact-checking process. It is impossible for us to vouch for the accuracy of this article. This is what necessitates a full retraction. We apologize to our readers.

**Commented [A16]:** Defamatory Statement No. 9

## MEMORANDUM OF DONALD CHRISTOPHER PECK
*Sent by Mr. Peck To All Staff Of The Atlantic On October 30, 2020*

"I'm writing to alert you all to some significant developments in our understanding of the accuracy of the recent magazine story, 'The Mad, Mad World Of Niche Sports Among Ivy-League-Obsesses Parents,' by Ruth Shalit Barrett. You can read an editor's note now attached to the story here …

New information establishes that Barrett was complicit with a source in the story, referred to as 'Sloane,' in an effort to deceive The Atlantic and its readers about the makeup of Sloane's family. The article originally included a reference to a son of Sloane's, but this was a fabrication to make Sloane less identifiable, because she was concerned about maintaining anonymity. Both Barrett and Sloane lied about this to the fact-checking department.

> **Commented [A17]:** Defamatory Statement No. 1
>
> **Commented [A18]:** Defamatory Statement No. 2

We became concerned about certain details of the story last week and have been rechecking it; we just confirmed Barrett's role in the fabrication of the son this afternoon.

> **Commented [A19]:** Defamatory Statement No. 3

It is crucial for us to understand fully the scope of deceptions and errors in the article and we are still working towards that goal. In addition to the lie about the son, we have so far identified and corrected a number of smaller errors. We ask for your patience and discretion as we continue our investigation.

I want to assure you that, in the coming days, we will examine all of the processes involved in the assignment and publication of the article, and work to reform them so that this doesn't happen again.

There is no doubt, however, that our choice of writer played the largest role. In 1999, when Barrett (her married name) was known by Ruth Shalit, she left The New Republic, where she was an associate editor, after plagiarism and inaccurate reporting were discovered in her work.

> **Commented [A20]:** Defamatory Statement No. 14

As we state in our editor's note, we decided to assign Barrett this freelance story in part because more than two decades separated her from her journalistic malpractice, and because she had bene published in recent years by reputable magazines. But this was self-evidently an act of poor judgment on our part, and one we regret. The assignment was a mistake.

> **Commented [A21]:** Defamatory Statement No. 21

So was the initial byline under which the piece ran. We typically defer to authors on how their byline appears, and originally we referred to Barrett as Ruth S. Barrett at her request. In the interest of transparency to our readers, we should have included the name that she used in her byline in the 1990s. We have changed the byline on this article to Ruth Shalit Barrett.

> **Commented [A22]:** Defamatory Statement No. 17

…. Don"

## THIRD EDITOR'S NOTE

*Published In Print By The Atlantic In The January 2021 issue of The Atlantic*

Editor's Note

In the November issue, The Atlantic published "The Mad, Mad World of Niche Sports Among Ivy League–Obsessed Parents." After we published this article, new information emerged that raised serious concerns about its accuracy, and about the credibility of the author, Ruth Shalit Barrett.

As we shared with our readers on TheAtlantic.com on November 1, we have decided to retract this article. We cannot attest to the trustworthiness and credibility of the author, and therefore we cannot attest to the veracity of the piece in its entirety.  [Commented [A23]: Defamatory Statement No. 10]

We have established that Barrett deceived The Atlantic and its readers about a section of the story that concerns a person referred to as "Sloane." The article (a PDF of which you can access on our website) stated that Sloane has a son. Before publication, Sloane confirmed this detail with The Atlantic's fact-checking department. After publication, when a Washington Post media critic asked us about the accuracy of portions of the article, our fact-checking department reached out to Sloane to recheck certain details. Through her attorney, Sloane informed us that she does not have a son, a fact we then independently corroborated.  [Commented [A24]: Defamatory Statement No. 11]

Sloane's attorney told The Atlantic that Sloane had misled the magazine because she had wanted to make herself less readily identifiable—and that Barrett had proposed the invention of a son as a way to protect her anonymity.  [Commented [A25]: Defamatory Statement No. 12]

When we asked Barrett about these allegations, she eventually admitted that she was "complicit" in "compounding the deception" and that "it would not be fair to Sloane" to blame her alone for deceiving The Atlantic. Barrett denies that the invention of a son was her idea, and denies advising Sloane to mislead The Atlantic's fact-checkers, but told us that "on some level I did know that it was BS" and "I do take responsibility."

Sloane's attorney claimed that there are several other errors about Sloane in the article but declined to provide examples. Barrett says that the fabricated son is the only detail about which she deceived our fact-checkers and editors.

During the initial fact-checking process, we corroborated many details of Sloane's story with sources other than Sloane. But the checking of some details of Sloane's story relied solely on interviews and other communications with Sloane or her husband or both of them.

In reviewing the article again after publication, before we retracted it, our fact-checking department identified several additional errors: We corrected the characterization of a thigh injury (originally described as a deep gash but more accurately described as a skin rupture that bled through a fencing uniform); the location of a lacrosse family mentioned in the article (they do not live in Greenwich, Connecticut, but in another town in Fairfield County); and a characterization of backyard hockey rinks as "Olympic-size" (the private rinks are large, but not Olympic-size).

Originally, we referred to the author of the article as Ruth S. Barrett. When writing recently for other magazines, Barrett was typically identified by her full name, Ruth Shalit Barrett. (Barrett is her married name.) In 1999, when she was known by Ruth Shalit, she left The New Republic after plagiarism and inaccurate reporting were discovered in her work. We typically defer to authors on how their byline appears. We referred to Barrett as Ruth S. Barrett at her request, but in the interest of transparency, we should have included the name that she used as her byline in the 1990s. On our website, we have changed the byline on this article to Ruth Shalit Barrett.

**Commented [A26]:** Defamatory Statement No. 19A

**Commented [A27]:** Defamatory Statement No. 16

**Commented [A28]:** Defamatory Statement No. 19B

We decided to assign Barrett this freelance story in part because more than two decades had separated her from her journalistic malpractice at The New Republic and because in recent years her work has appeared in reputable magazines. We took into consideration the argument that Barrett deserved a second chance. We were wrong to make this assignment, however. It reflects poor judgment on our part, and we regret our decision.

**Commented [A29]:** Defamatory Statement No. 22- identical language in 1st and 2nd Editors Notes

Our fact-checking department thoroughly checked this piece, speaking with more than 40 sources and independently corroborating information. But we now know that the author misled our fact-checkers, lied to our editors, and is accused of inducing a source to lie to our fact-checking department. We believe that these actions fatally undermined the effectiveness of the fact-checking process. It is impossible for us to vouch for the accuracy of this article. This is what necessitated a full retraction. We apologize to our readers.

**Commented [A30]:** Defamatory Statement No. 13