UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUTH SHALIT BARRETT, <br><br> Plaintiff, <br><br> v. <br><br> THE ATLANTIC MONTHLY GROUP LLC and DONALD CHRISTOPHER PECK, <br><br> Defendants. | Civil Action No. <br> 1:22-cv-00049-LLA |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL BRIEF**

WILLIAMS & CONNOLLY LLP
Joseph M. Terry
Stephen J. Fuzesi
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jterry@wc.com
sfuzesi@wc.com

*Attorneys for Defendants The Atlantic
Monthly Group LLC and Donald
Christopher Peck*

This case involves Plaintiff Ruth Shalit Barrett's deliberate inclusion of a falsehood in an article that she wrote for The Atlantic and her lies to the magazine's editors about it. Her claims fail as a matter of law for multiple reasons set forth in Defendants' pending motion to dismiss. *See* ECF Nos. 23, 27. Plaintiff's supplemental brief seeks to avoid dismissal of her suit with prejudice based on (1) an entirely irrelevant settlement of an unrelated lawsuit in Japan and (2) inapposite case law. Her brief raises no material factual or legal developments that affect any ground for dismissal. Defendants' motion is based on well-established law and should be granted.

I.  **THE SETTLEMENT OF AN UNRELATED CASE IS IRRELEVANT**

Plaintiff already has had the opportunity to file an amended complaint while on full notice of Defendants' arguments. *See* ECF Nos. 19, 22. Her last-ditch bid to avoid dismissal of her claims with prejudice on the basis of The Atlantic's decision to settle an unrelated case relating to an unrelated article brought in Japan under Japanese law is meritless. Plaintiff's account of the settlement, under which The Atlantic did not admit liability or wrongdoing, is so marred by distortion as to be nearly impossible to fully answer here.[1] But, even putting that aside, there are at least four reasons that Plaintiff's attempt to inject this matter into this case is legally irrelevant.

*First*, as a threshold matter, Plaintiff may not invoke a settlement and steps taken "pursuant to the settlement," Br. 1, to prove liability. That is blackletter law: "It is settled that an offer to

---

[1] By way of example, there was no "substantial" monetary settlement; there was no "trial" within the meaning of the American legal system; there was no "stealth-editing" a week after publication—the article stated at the top that it had been "updated and corrected" and bore a note at the end explaining the corrections and expressing that "we regret the errors"; the additional 2024 revisions made pursuant to the settlement were to further "updat[e]," "clarify," "add detail," and "remove" certain statements, as explained in the note—there was not a "correction and apology" for those; Plaintiff's math, at the very least, double counts the number of edits made; there was no purported "alteration of interview notes . . . to include an invented question" that "came to light" during the litigation; and descriptions of Kirshner's behavior at Newsweek were not "disproved" either (to the contrary, the on-the-record source provided a sworn affidavit reiterating them).

1

compromise, as well as an agreement to settle a claim, is inadmissible on the issue of liability," because a party is "permitted to make an effort to buy his peace without having such effort used against him as an admission of liability." *Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 126–27 (D.C. 1985) (quotations omitted); *see also, e.g.*, *Ferrell v. Fudge*, 2023 WL 2043148, at *9 (D.D.C. 2023) ("Rule 408 of the Federal Rules of Evidence provides that negotiations and offers of settlement are categorically inadmissible to prove liability."). Indeed, "[t]he policy of allowing litigants to buy their peace without fear of future or collateral consequences," *Farnum v. Colbert*, 293 A.2d 279, 282 (D.C. 1972), is all the more amplified here, where the matter involved a proceeding in a foreign country under foreign law with different legal standards and different procedural protections. The Atlantic's decision to resolve that action, including making changes to an unrelated article as part of the settlement, is irrelevant to the merits of Plaintiff's claims.[2]

*Second*, several of the purported new facts Plaintiff now invokes, including revisions relating to the article's discussion of health insurance coverage, are not "new developments" at all. Br. 1–2. As Plaintiff's Exhibit B reflects, those updates were made in *2017*—before Plaintiff ever filed suit, let alone filed her Amended Complaint. *See, e.g., Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 12 (D.D.C. 2012) (denying leave to amend where "the amendment relates to conduct of which the plaintiff should have been aware at the inception of the action").

*Third*, Plaintiff ignores a critical difference between that article and the one at issue here: Plaintiff here has *admitted* that she was complicit in intentionally including a fabrication and then repeatedly lying to The Atlantic about it. *See, e.g.*, ECF No. 23 at 2, 9–12, 17. Prior to filing suit, Plaintiff conceded that what she did was "egregious[]"—that it was a "serious error" and that she

---

[2] In fact, under the federal SPEECH Act, foreign defamation judgments are unrecognizable in U.S. courts except in certain limited circumstances, in order to protect free speech rights. *See, e.g., Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486–88 (5th Cir. 2013).

had "embarrassed The Atlantic and broken its trust with readers." *Id*. at 12.  She recognized that it was The Atlantic's "prerogative" to view her actions as a "cardinal lapse and retract[] the piece." *Id*.  Indeed, she pleaded that The Atlantic was entitled to "publish an Editor's Note admonishing" her and to "retract the entire article." *Id*.  The Atlantic did not retract her article because of a Latin maxim, as she posits ("*falsus in uno, falsus in omnibus*"), Br. 3, but because of The Atlantic's judgment as to the effect of Plaintiff's conduct on the ability to have confidence in her article.

*Fourth*, and perhaps most fundamentally, there is no plausible argument that the settlement or related revisions could be relevant to any of the grounds requiring dismissal, including actual malice.  Actual malice demands that the persons responsible for a publication either *knew* what they were saying was false or, at the least, "*in fact entertained serious doubts* as to the truth of [the] publication" and said it anyway.  *See, e.g., St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added); ECF No. 23 at 32–33.  That is, the authors must have "*in fact harbored subjective doubt*." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) (emphasis added).  And that doubt must have been about a specific statement: "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." *Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) (en banc).  Nothing in The Atlantic's decision to settle an unrelated matter and make revisions to an unrelated article even hints that an author of the notes at issue here "in fact harbored subjective doubt," *Jankovic*, 822 F.3d at 589, about what they wrote *relating to Plaintiff* when they wrote it.  For that reason alone, neither the settlement nor any revision provides any reason to permit any further amendment here.  It would not only be futile, but wholly baseless.

II.   **PLAINTIFF'S CITED CASES ARE INAPPOSITE**

Further, none of the cases cited by Plaintiff as purportedly "rejecting the same or similar arguments raised by Defendants," Br. 4, have any bearing on Defendants' motion to dismiss.  That

3

motion is based on well-settled legal principles—including relating to material falsity, opinion, defamatory meaning, and actual malice—none of which have changed since briefing was completed. Plaintiff's assertions misconstrue the cited cases and distort Defendants' arguments. A cursory review of the cases reveals that they are inapposite.

*Freeman v. Giuliani*, 2022 WL 16551323 (D.D.C. 2022), involved Rudy Giuliani's notorious falsehoods about Georgia election workers, accusing them of specific acts of election fraud, such as "surreptitiously & illegally handing off hard-drives." *Id*. at *8. That has nothing to do with any of the statements at issue here, and *Freeman* does not alter established law relating to protections for both subjective opinion and opinion based on disclosed facts that, as Defendants explain, apply with respect to many of the statements here. *See, e.g.*, ECF No. 23 at 14–15, 18–19, 20–22, 25–28.[3] Likewise, the "[o]ther recent cases . . . consistent with *Freeman*" that Plaintiff cites, Br. 5, also have nothing to do with the type of editorial judgments expressed by The Atlantic or change the law. *Schwartz v. Schwartz*, 2022 WL 17092577, at *2–3 (D.D.C. 2022), involved specific allegations of "stealing," such as: "Her business model is to steal the JillSchwartz group Listings that I secured." *Vasquez v. Whole Foods Market, Inc.*, 2023 WL 2663019, at *2, 4 (D.D.C. 2023), involved a statement charging plaintiffs with "manipulating a bonus program to their benefit," when they alleged their superiors directed them to take the steps at issue. And *Wright v. Eugene & Agnes E. Meyer Foundation*, 68 F.4th 612, 618, 626 (D.C. Cir. 2023), found actionable a statement that a foundation vice president "had to be fired or two-thirds of the staff would leave" and that she had "fostered a negative climate," but distinguished a comment that she was "toxic."

---

[3] Plaintiff additionally misstates the basis for The Atlantic's assessment that it could not "attest to the trustworthiness and credibility of the author" and thus cannot attest to "the veracity of the article." Br. 4. The publication explained that was due to what had come to light about her (admitted) conduct. *See* ECF No. 23 at 20–22; ECF No. 27 at 9–11.

4

Plaintiff's citation to *Fells v. Service Employees International Union*, 281 A.3d 572 (D.C. 2022) only confirms the need for dismissal. *Fells* involved an alleged implication that the plaintiff was ousted from his job based on claims of sexual misconduct because the defendant issued a statement expressly "tying his departure to an 'ongoing investigation' that was triggered by another executive's sexual misconduct" and asserting that the plaintiff's "own 'abusive behavior towards . . . predominantly female staff' was brought to light by that investigation." *Id.* at 577. Those facts bear no relation to the statements at issue here. But *Fells* did emphasize (as Defendants do in their briefing) that to state an implication claim based on a materially true statement, "it is not enough that a statement can be reasonably read to impart the false innuendo, but it must also *affirmatively suggest that the author intends or endorses that inference*." *Id.* at 586 (emphasis added, quotations omitted). This requires "an especially rigorous showing." *Abbas v. Foreign Pol'y Grp.*, *LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015) (quotation omitted); ECF No. 23 at 16. As demonstrated in Defendants' motion, Plaintiff cannot make that showing here with respect to her claims.

Finally, *Freeman* nowhere states that public figure status cannot be adjudicated at the pleading stage based on the complaint's own allegations and other information as to which a court may take judicial notice. *See* ECF No. 23 at 4 n.2; ECF No. 27 at 2–3. There is no dispute that public figure status is a question of law, and courts routinely dismiss libel actions on the basis of a failure to plausibly plead actual malice. Defendants' motion explains two different bases for holding Plaintiff, a known "media celebrity" who plunged herself into public debate by writing on a "topic of public importance" for a national publication, to be a public figure for purposes of discussion of her article and journalistic history. *See* ECF No. 23 at 28–31; ECF No. 27 at 14–17.

In short, for all of the reasons explained in Defendants' briefing, Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: February 26, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ Stephen J. Fuzesi*
Joseph M. Terry (D.C. Bar No. 473095)
Stephen J. Fuzesi (D.C. Bar. No. 496723)
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jterry@wc.com
sfuzesi@wc.com

*Attorneys for Defendants The Atlantic Monthly Group LLC and Donald Christopher Peck*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, a copy of this Defendants' Response to Plaintiffs' Supplemental Brief was filed via the Court's electronic filing system, and served via that system upon all parties required to be served.

Dated: February 26, 2024                              By:    */s/ Stephen J. Fuzesi*
                                                                    Stephen J. Fuzesi