IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RUTH SHALIT BARRETT**,<br><br>Plaintiff,<br><br>v.<br><br>**THE ATLANTIC MONTHLY GROUP LLC**,<br><br>and<br><br>**DONALD CHRISTOPHER PECK**,<br><br>Defendants. | Case No.: 1:22-cv-00049-EGS |

**PLAINTIFF'S REPLY SUPPLEMENTAL BRIEF ON NEW AND PERTINENT FACTUAL AND LEGAL DEVELOPMENTS SUPPORTING DENIAL OF DEFENDANTS' MOTION TO DISMISS**

Defendants' supplemental response is premised on its false depiction of Ms. Barrett as a liar who deserved public excoriation for her "deliberate inclusions of a falsehood" and for concealing it from *The Atlantic*. Br. 1, 2. The FAC alleges otherwise: Ms. Barrett acted appropriately to protect the anonymity of a confidential source who had been inadequately shielded by *The Atlantic*, counter to their agreement, and had been tracked down and contacted by the *Washington Post*. This false depiction is the very same fictitious portrayal the FAC alleges carried the defamatory gist and sting at issue in this case. By advancing the accusations at the core of the FAC, Defendants' reply thus only further underscores that the FAC pleads actionable claims.

That depiction is also why *The Atlantic*'s treatment of Molly Ball's article, *When the Presses Stop*, is probative. Defendants' response to Ms. Barrett's supplemental brief, and their distortion of the facts emerging from the defamation lawsuit over Ms. Ball's article, exemplifies their strategy of vilifying Ms. Barrett and twisting the facts as to her while downplaying ethical violations and falsehoods in other articles and doubling down on their disproven claims.

For example, Defendants write in their footnote: "There was no 'stealth-editing' [of Ms. Ball's piece] a week after publication." But on December 16th, 2018, a week after publication, *The Atlantic* learned that Bernard Krisher had not "abandoned" Ms. Ball following her illness but had instead arranged six extra weeks of sick pay and petitioned her insurer for more robust coverage. *The Atlantic* responded by scratching out the following sentence from the article without notice to readers: "I felt, and still feel, that it was cruel and hypocritical for a purported humanitarian to abandon an employee when she became inconvenient." This is a classic stealth edit.

Similarly, Defendants declare that the article's "descriptions of Kirshner's [sic] behavior at Newsweek were not disproved," yet a three-judge panel of the Japanese tribunal found that such descriptions were defamatory, based on hearsay upon hearsay, and were "false." *The Atlantic* has

1

now deleted the allegations in question.

Likewise, Defendants' assertion that Ms. Barrett "admitted" complicity in "a fabrication" and "lying . . . about it," Br. 2, takes contextless, unpled statements and self-servingly filters them to invent a broad apologia of wrongdoing.[1] Ms. Barrett will prove that she made most of these self-chastising statements because she was led to believe the first Editor's Note would expose her source and decry her as a liar.  She thus fell on her sword to protect "Sloane," urging her editors in writing not to scapegoat her source and to place more of the blame on Ms. Barrett instead.  She stands by her decision to protect her source while under pressure from *The Atlantic* to do the opposite and believes the choice she made was not only permissible but ethically obligatory.

More importantly, Ms. Barrett's statements during this period certainly never "admitted" the truth of the principal statements by Defendants carrying the defamatory gist and sting alleged in the FAC—those concerning her work and past career. *See, e.g.*, D.E. 24 at 3. Defendants just reframe the FAC to state a different theory of liability and then attack that strawman.

Defendants' argument concerning the admissibility of a settlement is also misdirection. Ms. Barrett's arguments don't center on the fact of settlement; they center on facts that came out during another litigation—many of which are undisputed because Defendants publicly admitted them in their correction and apology note for *When the Presses Stop*.

Finally, Defendants' arguments concerning the cases cited by Ms. Barrett all incorporate and rely on their extraneous reframing of the FAC. When considering the *actual* theory of liability pled in the FAC, these cases' relevance is apparent.

---

[1] Defendants' claims regarding Ms. Barrett's supposed "admissions" are not based on allegations in the Complaint, as one would expect based on Defendants' presentation of them as direct quotations. *See* Br. 2-3. These references are actually quotations to Defendants' own motion to dismiss brief, which in turn "quotes" extraneous materials that are outside the pleadings. *See* D.E. 24 at 15-16.

Dated: March 4, 2024                                        Respectfully Submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (DC Bar No. 456161)
Leora Friedman (DC Bar No. 1735514)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*

Elliot C. Rothenberg (*pro hac vice*)
Attorney at Law
124 Groveland Avenue
Minneapolis, MN 55403-3607
Telephone: (612) 508-5373
*ecrothenberg@gmail.com*

Alexander Rufus-Isaacs (*pro hac vice*)
Rufus-Isaacs, Acland & Grantham, LLP
9440 Santa Monica Blvd., Suite 301
Beverly Hills, CA 90210
Telephone: (310) 770-1307
Facsimile: (424) 258-7383
*aisaacs@rufuslaw.com*